Rossell J.
The counsel in support of the judgment, in this case, rely on three reasons. 1. That Denise Schenck having no interest in the suit at the time of entering the judgment, and not being a party to the record, cannot now be heard.
2. The judgment -being entered on the records of this court, is not a subject matter on which the justices can adjudicate, but the party complaining must be left to his writ of error.
3. That the judgment is regularly entered in the name of Noble Reed, the obligee, as in that it followed the terms of the power of attorney annexed to the bond.
I shall consider these propositions in their order. As to the first. Denise Schenck is a party interested in this judgment. He is the bona fide purchaser, and in actual possession of the land on which the execution following this judgment has been levied. And I take it to be a clear rule, founded on the immutable principles of justice, that he whose interest is to be affected by the acts of a court, has in every such court, a just right to be heard. And that it has been the practice of this court, to so let in the party in interest, although his name does not appear on the record, is proved by the case in Goxe’s Rep. 3, where the heir, though not *a party to the record, moved to set aside the judgment. This too, is the practice of our *405 sister state of New-YorJc. 3 John. 20. A purchaser after judgment, was heard in a motion to set it aside, and although he did not prevail, no objection was taken to him. In Pennsylvania also, Soyer a partner of Basse, confessed a judgment in the name of the firm. On the application of creditors, not parties to the record, the judgment was annulled. Other authorities might be named, but these are sufficient to establish the principle, that courts will, on all proper occasions, hear the party whose interest is to be affected by their judicial proceedings.
Not a solitary case supports the principle laid down in the second point, advocated by the counsel for the plaintiff; but there are abundant authorities to prove the contrary. 2 Strange 1121. After execution, the court set aside the judgment for irregularity. 1 Strange 20. One executor confessed judgment for himself and co-executors; and the judgment for this was annulled, (a) A. Burr. 1996. A judgment in ejectment had been regularly obtained, and the writ of possession issued and executed. The judgment was set aside on the application of the party in interest. 9 John. 8. The court say they have an equitable jurisdiction over judgments entered up before them on warrants of attorney. But we need not seek authority for this power out of our own state. Coxe’s Rep. before cited, and Pen. Rep. Wood v. Hopkins, 689, shew that this court have exercised this power over judgments entered up before them.
As to the third point. I consider it a sound principle of law, that to enable a party to recover in any action, real or personal, he must make out in himself a clear and undoubted right to the matter or thing demanded. If this is correct, and we apply this rule to the case before us, how does it stand. Noble Reed comes into court and demands judgment on a bond, with a warrant of attorney annexed, authorising a confession of judgment to himself only. On the same instrument is an assignment in full from Reed to Thorne, a third person, shewing that for a valuable consideration, Reed had parted with his *406 whole interest in the , obligation on which judgment thus demanded. If under such circumstances (as the law now stands) he could obtain a judgment, this rule, founded in common sense and common justice, becomes a dead letter. But it is contended there are exceptions to *this rule in the cases of common carriers and auctioneers, who are permitted to maintain actions although the property in the thing for which it is brought, is confessedly in a third person. But it may be asked how are they permitted to sustain such actions? It is only by shewing a special property in themselves, to the matter in dispute, at the time it went into the hands of the defendant, and sueing in their own name, that they are enabled to recover; if they fail so to do, they cannot prevail. And this, so far from impugning the general rule, is in absolute confirmation of it. It is again urged; that although a bond is a chose in action, and therefore not assignable at common law; yet courts have for ages protected the rights of assignees and permitted them to sue for and recover in the name of the assignor; that our statute of 1797, by making bonds assignable, was not intended to take away this common-law right, which continues, in all points, as it did before the passing of that law. In support of this doctrine, they have cited 3 John. 426. 2 John. 260. Black. 81. 7 Term. Rep. 763, 2 Cranch 342. 1 Oranch 428. 1 John. 580. In looking into these cases;” we find points that are not disputed; as that courts will protect the rights of assignees; that a statute without negative words, express or implied, does not take away a previous remedy. But the cases most relied on are from 2 Oranch 342, and 10 Johnson 580. The first was an action brought by the assignees of several bills of exchange, charged in an open account in the name of the assignor (one of the firm). The defendant moved the court to instruct the jury, that as the balance was transferred to the firm this was not a subsisting debt from the defendants to the plaintiffs alone, at the commencement of the suit; the court overruled this motion “ for that although the debt was in equity transferred to the assignees, yet the suit was maintainable for their benefit, in the name of the assignor. The case in John, was in equity. A note was *407 assigned by one Johnson to the respondent, and a mortgage originally given as a security for the debt, to him at the same time. The chancellor decreed, “ that as Johnson, in every equitable point of view, was the maker of both note and mortgage, that they were delivered at the same time, parcels of the same contract, inseparably connected, directed to the same object, and satisfied by the same means; that an assignment was not necessary to vest the equitable right of the mortgage in the respondent.”
*Neither of these cases in my opinion support the doctrine contended for by the counsel for the plaintiff; in the first, had the legal as well as the equitable right been transferred, the decision of the court would in all probability have been different. In the second, it is the province of the court in a peculiar manner, to protect the equitable lights of parties ; and the chancellor very justly decreed, that this equitable right to the mortgage in question, agreeably to the original understanding of the parties vested on its delivery according to that intention.
In examining this subject a little farther, it will not be necessary to go into the doctrine of choses in action before the statute of Anne, and the gradual modification of that doctrine subsequent to that statute; it appears to have settled down in this: that c oses in action, not made assignable by that statute, were so far recognized and protected, that courts would permit the assignee as trustee, agent or attorney, for the assignor, to bring an action in his name to recover the money actually due on the obligation. In this situation they were, when the legislature of this state, passed the law of 1797, thereby declaring, “ The assignment of bonds, bills, &c., good and effectual in law, and that the assignor of any such, may maintain an action of debt in his own name.” It is alleged that the word may, was cautiously selected to secure tiro subsisting rights of assignees to instruments assigned; or in other words, to give' to assignees an additional right of action. I do not think this correct. It is not reasonable to suppose the legislature would act without a motive, and if the interest of assignees of bonds, bills, &c. were so protected as to insure a recovery on all *408 kinds of 'assignments, what reason or necessity existed, the legislative interference, and to adopt a course so unusual as to give two remedies for the most simple of all actions, debt on a bond, &c. The wisdom of legislatures is seen in the uniformity of their laws. They avoid, and as much as may be, do away all circumlocution and fiction in the execution of those laws, and their motives must be sought for from the subject matter, before them. I therefore believe, that our legislature took a more comprehensive view of the subject of assignments ; (a) they saw the absurdity and hardship of shackling instruments, assignable on the face of them, by the antiquated rules of the ancient common law, and compelling courts and parties to resort to fiction to establish rights incontrovertibly *just in themselves. The old doctrine (adopted to avoid maintenance) that choses in action, could not be assigned, had been so far done away, that the assignee had a property in the paper and wax, and was permitted to bring an action. If then, a third person could thus acquire an interest in the thing, whether he brought the action in his own or in the name of another, it could not affect the question of maintenance, on which the rule was formed. The reason of the rule then, being done away, the legislature wisely concluded the rule itself should cease. They therefore annexed the now legal right of the assignee, to his then equitable one, and empowered him like all other creditors, to sue in his own name for his own debt: but by no means exempted him from the general rules established for the regulation of others.
When affirmative words, in sense contain a negative, they are equally as binding as when the negative is used. May is frequently construed to mean shall. (b) The statute of Henry the VI. and 28, enacts, that sheriff may bail, under which he is bownd to bail; so by the statute of Gharles II. 12; church-wardens and overseers may make rates to reimburse the constables; an indictment lies against them if they refuse.
*409 But if my ideas respecting the intention of the legislature, are unfounded, let us examine what was the actual common law right acquired by Thorne, in this bond and warrant of attorney, under this assignment. “Endorsements are made either in blank, in full or restrictive. If in blank, it is said not to transfer the property and interest without some further act. If the endorser fill up the blank and make it payable to himself, the action cannot be brought in the name of the endorser, which otherwise it may be.” Chit, on Bills. 3. If this rule in Chitty is correct, and it appears to me to be founded in sound reason, Thorne having taken an assignment in full, could not before the passing of our act of 1797, maintain an action in the name of Noble Reed; nor could he on the warrant of attorney, enter up a judgment in his own name, as the confession of judgment therein expressed is restricted to Noble Reed only. It is not contended that our statute gives any support to this judgment; and if at common law, it could not be brought in this form in this manner, on what ground can it be sustained by this court ? If it is said this is form only, and should not be permitted to destroy the sub*stantial rights of parties; it may be answered, that it is a form which has governed judges from the earliest times, and although many mere forms have been done away for the promotion of justice, this still remains, and courts and parties are bound to a compliance with it.
On this view of the subject, I am of opinion, that this judgment has been irregularly entered and cannot be supported.
Judgment set aside.

 Ballinger vs. Sherron, 2 Gr. 145.

 Sheppard vs. Stites, 2 Hal. 94.

 Seiple vs. Borough of Elizabeth, 3 Dutch. 407. State vs. Newark, 4 Dutch. 491. See Woodhull vs. Neafie, 1 Gr. Ch. 409. Ludlow vs. Ludlow, post 394.