# PARKER *v.* DUSTIN.

A grantor executed a deed and delivered it to a third person, with instructions to deliver it to the grantee upon the grantor's death. He afterwards told the grantee that he had given him the land, and directed him to take possession of it, which the grantee did, and afterwards remained in possession. *Held*, that it was a question of fact for the jury upon the evidence, whether the grantor deposited the deeds with the third person, to be delivered at his decease without reserving any control over it, during his life; and that the deed should be considered as delivered or not, as the finding of the jury might be on the question of his intention.

TRESPASS for breaking and entering the plaintiff's close and cutting wood and timber.

The controversy related to the position of the line between the lands of the parties.

The plaintiff introduced evidence tending to prove that David Dustin the defendant's father, under whom he claims and who had occupied the land now claimed by defendant for many years as owner, was upon the land in January, 1835, with one Webster, who was then the owner of the land now owned by the plaintiff, and a surveyor, and they then ran and marked the line between them, and recognized and agreed upon that line as the true line.

The defendant introduced a deed of his land from said David to himself, dated January 4th, 1831, and purporting to have been executed and delivered at that time. Nathaniel Dustin, the witness called to prove the execution of this deed, testified, that on the 4th of January, 1831, David Dustin signed, sealed, and acknowledged nine deeds, including this, to his nine children, conveying to each one or more tracts of land, and, among the rest, the home place on which he lived: that, about a month after, he delivered the deeds to the witness and asked him to take them and keep them till David's death, and then deliver them to the persons whose names were written upon the back of them; that the defendant's name was on the back of this deed, and that the witness kept this and six of the others till the decease of David, in 1841, when he delivered them as he was directed. Some years after the deeds were put in his hands, David called on him and desired to take two of the deeds, saying that Mrs. Bailey, the grantee named in one, wished to sell her land, and he wished to make some alteration about fences in the other, and he would then return it; but neither of the deeds was ever returned.

The spring after these deeds were made, David told the defendant that he had given him the land included in the deed to him, and told him to take possession and do the best he could with it; and the defendant took possession and has always since occupied it, either by himself or his tenants, and paid the taxes upon it.

The defendant objected to the evidence respecting the settlement of the line by David Dustin and Webster, because said David was neither the owner nor occupant of the defendant's land, but the defendant had both the legal title and the occupancy, and he was not present and had no knowledge of David's acts and could not be affected by them.

The Court charged the jury that if they should be of the opinion that the intention and understanding of David Dustin was to deposit the deeds to his children in the hands of Nathaniel Dustin, to be delivered to the grantees at his decease, without any condition and without reserving any control of the deeds or of the property during his life, then the property passed at once to the defendant, Ebenezer Dustin, and he was in no way bound

36 *

by any acts or agreements of David Dustin in relation to the property.

But if they were of the opinion that it was the intention of David Dustin to reserve a control over the deeds, and over the property during his life, the deeds would not take effect so far as the question before them was concerned, during his life, and therefore his acts and agreements in relation to the property would be binding on himself and all who claimed under him, and of course on Ebenezer Dustin, notwithstanding David Dustin had put him in possession of the property soon after the date of the deed.

The defendant then requested the Court to charge the jury that if, upon the evidence, they should be of the opinion that the deed of David Dustin to the defendant was put into the hands of Nathaniel Dustin, to be delivered to the defendant after the death of David, he retaining no control over the deed, and he put the defendant into possession of the land soon after the deed was put into the hand of Nathaniel, and the deed was, after the death of David Dustin, delivered to the defendant by Nathaniel Dustin, the defendant acquired a title in the premises which relates back to the date of the deed, and David Dustin's acts or agreements could not affect the defendant, and the evidence in relation to the same should be laid out of the case, but the Court declined so to charge.

The jury found a verdict for the plaintiff, which the defendant moves may be set aside, because evidence of the acts and declarations of David Dustin were admitted as aforesaid, because the Court charged the jury as stated and declined to charge as requested, and because, as he contends, there was no sufficient evidence from which the jury could find that David Dustin intended to reserve any control over the deeds deposited with Nathaniel Dustin, or the property thereby conveyed.

*G. C. Bartlett, Marston,* and *Emery,* for the defendant.

1. The deed of David Dustin to the defendant was not handed to Nathaniel Dustin as an escrow to be delivered upon the performance of some condition; but it was to be delivered upon the happening of a certain event, the death of the grantor.

Where a deed is delivered to a stranger merely to await the lapse of time and not the performance of a condition, it will be deemed the deed of the grantor presently, and devest the estate of the grantor from that time. *Foster and wife* v. *Mansfield*, 3 Met. 412; *Shed* v. *Shed*, 3 N. H. Rep. 454; *Wheelwright* v. *Wheelwright*, 2 Mass. 447; *Hatch* v. *Hatch*, 9 Mass. 307.

The instructions asked for by the defendant, were exactly conformable to the above authorities and ought to have been given.

2. Declarations of a grantor after execution of a deed, which go to take away a vested right, are not admissible against the grantee. *Brackett* v. *Wait*, 6 Vt. 411; *Clark* v. *Wait*, 12 Mass. 439; *Phœnix* v. *Ingraham*, 5 Johns. 412.

In the case at bar, the declarations of the grantor were made long after his execution of the deed, but long after he had put the grantee in possession.

3. The charge of the Court "that if David Dustin intended to reserve a control over the deeds and over the property during his life, his acts and agreements in relation to the property would be binding on the defendant," was erroneous.

The case of *Shed* v. *Shed*, above cited, is directly in point. The right to control, alter, and revoke, was expressly reserved to the grantor, and yet it was holden to be the deed of the grantor from the first delivery.

4. There was no competent and sufficient evidence from which the jury could find that David Dustin intended to reserve any control over the deed to the defendant, or the property thereby conveyed.

The deed was absolute in form, and the only directions given to the person with whom the deed was deposited, were to deliver it on his, the grantor's death. He told the grantee he had given him the deed, and directed him to take possession of it, which he did, and has retained the possession ever since.

. The grantor in fact never did take possession of the deed or land afterwards, or exercise any control over either.

*French*, for the plaintiff. ˙

I. Whether the deed from David Dustin to the defendant, was his deed from the first delivery, or an escrow, or a writing to become a deed from a second delivery, are questions which depend upon the intention of the grantor, there being no other party present in this case. The character and effect of the instrument will " depend rather on the words used and the purposes expressed, than on the name which the parties give to the instrument." *Shaw*, C. J., 3 Met. 414.

" Whether the deed was delivered as a writing, to be delivered as the grantor's deed on his death, or whether it was delivered as the deed of the grantor (to Nathaniel Dustin) in trust for the grantee, to be delivered on the grantor's death, is a question of fact to be determined by the evidence." *Parsons*, C. J., *Wheelwright* v. *Wheelwright*, 2 Mass. 451.

The plaintiff rests his case " upon the clear intention of the grantor, and the well settled rule of law, that the Court are bound to give effect to that intention if it can in any way be legally done." *Richardson*, C. J., 3 N. H. 454.

The intention of the grantor so far controls, that even an escrow shall be considered as taking effect from the first delivery, to accomplish his intention. *Foster et ux.* v. *Mansfield*, 3 Met. 415. Although, as a general principle, the deed takes effect from the second delivery, and the relation back is a fiction of law, " to avoid injuries to the operation of the deed from events happening between the first and second delivery." 4 Kent. 454.

Upon the reasoning of *Shaw*, C. J., in *Foster et ux.* v. *Mansfield*, it would seem that even if this were the " grantor's deed presently," it will not take effect as a deed until the second delivery.

The test suggested by *Perkins*, cited 2 Mass. 452, is the true one.

" If a grantor deliver any writing *as his deed* to a third person, to be delivered over by him to the grantee on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the grantee. And if the grantee obtain the

writing from the trustee before the event happen, it is the deed of the grantor, and he cannot avoid it by a plea of *non est factum.*

But if the grantor make a writing and seal it, and deliver it to a third person as his writing or escrow, to be by him delivered to the grantee, upon some future event, as his, the grantor's deed, and if it be delivered to the grantee accordingly, it is not the grantor's deed until the second delivery. And if the grantee obtain the possession of it before the event happen, yet it is not the grantor's deed, and he may avoid it by pleading *non est factum.*" *Parsons*, C. J., 2 Mass. 452.

Even when the deed was held to be " the grantor's deed presently," the Court say, " As the estate did not effectually pass until the second delivery, if that second delivery had been prevented, it would probably have been held that it was wholly inoperative." *Shaw*, C. J., 3 Met. 415.

Upon this reasoning, unless the deed were delivered to the third person as a mere trustee, as a deed intended to operate presently, it has no effect to pass the estate, and the fiction only saves its vitality.

Whether it depend on a condition to be performed, or merely await the lapse of time, it has no effect as a deed until the second delivery.

The instructions of the Court were in accordance with the principles of the above cases, and they properly declined to instruct " that the defendant acquired a title in the premises which relates back to the date of the deed."

By the defendant's own authorities, at the most, he gets nothing but his legal fiction — nothing that resembles " a title in the premises," which shall give him control of them.

II. There was evidence from which the jury might well infer that David Dustin intended to reserve control of the premises, some of which is : —

The fact that he might have delivered the deed to the grantee and did not, which is of itself sufficient.

The fact that he recalled part of the deeds in order to deliver one, and so give a present title, and to alter another.

The fact that he remained on the land, and acted as owner in this very matter, and agreed on the line.

The fact that he made a general family arrangement, and included even his home place in the deeds.

These facts all tend to show that the grantor's intention and purpose was to retain the control of his property during his life, and not to vest a present title in the defendant.

GILCHRIST, C. J.   The defendant claims under the deed of his father, David Dustin, of the 4th of January, 1831.   The case finds that David delivered the deeds to the witness, and asked him to keep them until his death, and then deliver them to the grantees.   David died in 1841, when the witness delivered them.   David told the defendant he had given him the land, and to take possession, which he did, and has always retained it.

But it may be a question whether the transaction itself does not show an intention in the grantor to keep the deeds ambulatory until his decease.   If he did not mean to reserve the same power over them that he would have over a will, why did he not deliver them during his life ?   His statement to the defendant, that he had given him the land, and that he might take possession, by parol, would not affect his rights.   It amounted at most, to a parol permission to occupy the land.

It may also be a question whether, admitting the position of the defendant to be correct, and the deed to operate from the death of the grantor, by relation back to the first delivery, the consequence follows which he supposes.   The authority given to Nathaniel Dustin, was revocable in its nature.   It might have been revoked during the life of the grantor, and after that he could not have delivered the deed.   The consequence was voluntary without valuable consideration, and would have been ineffectual against a creditor, or the land might have been conveyed to a stranger.

When did the title vest in the grantee ?   In *Foster* v. *Mansfield*, 3 Met. 412, the grantor executed the deed and delivered it to Dr. S., with directions to deliver it to the grantee after his death, which was done.   The question was, whether this was a

good execution and delivery of the deed, so as to vest the property in the grantee in the lifetime of the grantor. *Shaw,* C. J., says, " when the deed is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently; still, it will not take effect as a deed until the second delivery, but when thus delivered, it will take effect by relation from the first delivery." As the estate did not effectually pass until the second delivery, if that second delivery had been prevented, it would probably have been held that it was wholly inoperative.

If a grantor deliver any writing *as his deed* to a third person, to be delivered over to the grantee by him on some future event, it is the grantor's deed presently, and the third person is a trustee of it for the grantee. *Wheelwright* v. *Wheelwright,* 2 Mass. 452.

Upon this view, the grantee would have an interest, and if the happening of the event is merely the period appointed for the exercise of the right, a subsequent feoffment would not defeat it although there was merely *traditio inchoata.*

In the above case, there was no evidence that the grantor was to have any control after the first delivery.

In *Hatch* v. *Hatch,* 9 Mass. 307, the grantor delivered a deed to a third person to be kept by him until the grantor's death, and then to be delivered by him to the grantee. It was held, that whether the writing was to be considered as a deed or as an escrow, at the time of the first delivery, it was to be considered as then effectually delivered to the use and benefit of the grantee, he having received the deed and occupied and claimed under it after the grantor's death.

In *Doe* v. *Bennett,* 8 C. & P. 124, the grantor made a deed of his property to his daughter, and said, in presence of the witnesses, no one else being present, " This is my last act and deed." After this, he desired a third person to keep it, and not deliver it to the grantee until he was dead, it being suggested to him that she might otherwise take his property from him in his lifetime. *Coleridge,* J., ruled that the delivery had been completed.

A delivery may be either absolute, or conditional; absolute, when it is to the grantee himself or to some person for him; conditional to a third person to keep until something is done by the grantee, and it does not take effect until the condition is performed. Cruise, Title, 32, Ch. 2; *Jackson* v. *Catlin*, 2 Johns. 259.

This deed was clearly not an escrow, and it seemed to come within the class mentioned in the Massachusetts cases.

The question of the delivery of a deed was much considered in the case of *Doe* v. *Knight*, 5 B. & C. 671, in an elaborate opinion delivered by Mr. *Justice Bailey*. The facts were these: Wynne, an attorney, owed Garnous, having misapplied the money of Garnous. On the 12th of April, 1820, Wynne went to his sister's, and produced a mortgage to Garnous, ready sealed, signed it in presence of his niece, using these words: "I deliver this as my act and deed." The niece witnessed it by his desire, and Wynne took it away. She did not know what the deed was, nor was Garnous's name mentioned. In the same month, he delivered a parcel to his sister, requesting her to keep it, as it belonged to Mr. Garnous. He came for it again in a few days, and she gave it back, and he returned it on the 14th, saying, "Here, put this by." He died on the 10th of August, and the parcel was opened and found to contain the mortgage.

In the month of May following this April, he mortgaged his real estate to the defendant.

The question therefore involved in the case was, whether the first deed was so delivered that Wynne had no control over the land to mortgage it; similar in that respect to the present question, whether David Dustin, after the delivery of the deed to Nathaniel could make an agreement about the line.

The Court, (Garow, B.) told the jury that the question was for them to decide whether the delivery to Miss Wynne was, under all the circumstances of the case, a departing with the possession of the deed, and of the power and control over it for the benefit of Mr. Garnous, and to be delivered to him, either in Mr. Wynne's lifetime, or after his death, or whether it was delivered to Miss Wynne merely for safe custody, as the deposi-

Parker *v.* Dustin.

tary, and subject to his future control and disposition. If for the latter purpose, they should find for the defendant. The verdict was for the plaintiff.

*Bayley*, J., said that the opinion of the jury therefore, was, that Wynne parted with the possession, and all control and power over the deed, and that she held it for Garnous, free from all control and disposition of her brother. It was urged that there was no evidence to warrant the finding. Is this objection, however, valid? Why did Mr. Wynne part with the possession to his sister, except to put it out of his own control? And though she did return it to her brother when he asked for it, would she not have been justified had she refused? The finding, therefore, is well warranted by the evidence. There are many authorities, that a deed will operate as a deed, though it is never parted with by the grantor. Where there is nothing to show that he did not intend it to operate immediately, it is a valid deed.

But if this point were doubtful, it is clear that the delivery to a third person for the use of him in whose favor the deed is made, where the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery.

The question which *Bayley*, J., puts, is pertinent here, — Why did David Dustin part with the possession of the deed, except to put it out of his own control?

Our opinion is, that the instruction was sufficiently favorable to the defendant, and that there should be

*Judgment on the verdict.*