Brown *v.* Austen.

---

WILLIAM BROWN and others *vs.* DAVID AUSTEN and others.

The delivery of a deed need not be to the grantee; it may be to a stranger, for and in behalf of the grantee, and if unconditional, will take effect immediately.

As a general rule, the delivery of a deed is complete when the grantor has put it beyond his power to revoke or reclaim the deed.

On the 28th of September, 1848, A., being perfectly solvent at the time, and the owner of three lots fronting on Union place in the city of New York, with dwelling houses thereon, executed, together with his wife, three several deeds, of that date, by each of which the grantors conveyed to one of their three daughters one of the said houses and lots, for life, and after her death to her children then living and to the descendants of such of her children as should have died before her; and in case the grantee should die without leaving issue, then to her heirs at law, in fee. Two of the houses had been built for the daughters, by A., and were then occupied by them; one of these deeds was delivered to H., the grantee, at the time it was executed. After retaining it in her possession about a week, she returned it to A., saying she wished him to keep it for her, as she feared she might lose it. A. then told her that he would put it, together with the deeds to her two sisters, into the hands of N., and that she could have it whenever she wished. A. then took the three deeds to N. and left them with him, to be given to the grantees; taking receipts from N. for two of such deeds, each of which stated that N. had received such deed from A. in escrow, and agreeing to deliver the same to the grantee upon the death of A. or at such earlier period as might be by him designated. N. also gave A. a receipt for the deed to H., agreeing to deliver said deed to H. after the deaths of A. *and his wife*, or at such earlier period as should be by *either of them* designated. The grantees in the deeds were each informed by A. that the deeds had been left with N. for them, and that they could have them whenever they wished. On the 7th of March, 1851, the firm of which A. was a member, failed, and A. became insolvent. The plaintiffs were judgment creditors of the firm.

Brown *v.* Austen.

Two days previous to the failure, A. called upon N. and requested him to deliver the deeds to the grantees respectively, writing a direction to that effect, signed by him, at the foot of each receipt. On the same day N. delivered the deeds to the grantees therein, respectively.

*Held,* 1. That the question as to the delivery of the deeds by A. to N. was a question of intention, to be gathered from the whole evidence. That if, by the transaction, A. intended, at that time, irrevocably to secure the property to his three daughters and their issue, there was nothing to prevent his doing it, he being then solvent, and the natural affection of a father constituting a sufficient consideration.

2. That the case turned upon the nature and effect of the first delivery of the deeds — the delivery to N. in trust for the daughters.

3. That the delivery of the deeds to N. was to be deemed an irrevocable and complete delivery for the use of the daughters. That by such delivery the deeds took effect, and were intended to take effect, presently, passing at least life estates to the grantees, upon which the plaintiffs could have no claim or lien, by virtue of their judgment against the grantor.

4. That A. could not have revoked or reclaimed the deeds, of his own will, and without the consent of the grantees, at any time after their delivery to N.; the terms of the receipts which expressed the trust on which N. received the deeds, being that they were to be delivered to the grantees at all events.

5. That A., after accepting those receipts from N., would not have been permitted to revoke or reclaim the deeds, even as gifts.

6. That the gifts, if gifts, were executed by the delivery of the deeds to N. and the acceptance of the receipts, by A.

7. That the deeds were not invalid on the ground that they unlawfully suspended the power of alienation.

8. That if the question as to the legal effect and operation of the deeds, supposing the first delivery to have been complete, could be called a cloud upon the title, it was a legal cloud, which should be cleared away by a court of law.

THIS action was brought by the plaintiffs, who were judgment creditors of David Austen, for the purpose of having three several deeds which had been executed by him, conveying land to his daughters, adjudged to be fraudulent and void as against the plaintiffs' judgment; and to have such judgment declared to be a lien on the premises described in such deeds respectively. The complaint stated the recovery of a judgment in this court, by the plaintiffs, on the 7th of October, 1851, against David Austen, John H. Austen, Charles B. Spicer, George W. Austen and James Austen, partners in business under the firm name of Austens & Spicer,

for the sum of $20,653.47, and the issuing of executions thereon, and the return thereof unsatisfied. The complaint further alleged, that the defendant David Austen, being seised in fee simple of the dwelling houses and lots of ground thereinafter described, at some time or times heretofore, but when precisely the plaintiffs were uninformed, with Mary his wife, subscribed and sealed their certain deeds, bearing date respectively on the 28th day of September, 1848, one of which purports to convey in fee simple to Hannah C. Austen, a daughter of the said David, who subsequently married the defendant George S. Fox, all that certain lot, piece or parcel of ground, with the buildings thereon erected, situate in the eighteenth ward of the city of New York, on the westerly line of Union place, and described particularly by metes and bounds. To have and to hold unto the said Hannah C. Austen, for and during her natural life, and after her death to her children then living, and to the descendants of such of her children as should have died before her, as tenants in common *per stirpes* and not *per capita;* and in case the said Hannah C. Austen should die without leaving children or the descendants of children, then to the heirs at law of the said Hannah C. Austen forever. That another of such deeds purported to convey unto the defendant Sarah Ann Townsend, wife of William H. Townsend, the said Sarah Ann being also a daughter of said David Austen, a certain other lot, piece or parcel of ground, with the buildings thereon erected, situate on the westerly line of Union place, adjoining the last lot, and described more particularly by metes and bounds. To have and to hold unto the said Sarah Ann Townsend for and during her natural life, to her sole and separate use as if she were unmarried, and after her death to her children then living, and to the descendants of such of her children as should have died before her, as tenants in common *per stirpes* and not *per capita;* and in case the said Sarah Ann Townsend should die without leaving children or the descendants of children, then to the heirs at law of the

said Sarah Ann Townsend. That the other of such deeds purported to convey in fee simple unto the defendant Mary Townsend, wife of Isaac Townsend, the said Mary being also a daughter of said David Austen, a certain other lot, with the buildings thereon erected, situate on the westerly line of Union place, adjoining the lot last mentioned, and described more particularly by metes and bounds. To have and to hold unto the said Mary Townsend for and during her natural life, to her sole and separate use as if she were unmarried, and after her death to her children then living, and to the descendants of such of her children as should have died before her, as tenants in common *per stirpes* and not *per capita;* and in case the said Mary Townsend should die without leaving children or the descendants of children, then to the heirs at law of the said Mary Townsend forever. The said plaintiffs further stated that the only living children of the said Sarah Ann, wife of William H. Townsend, are the defendants Alice Townsend, Mary Townsend, Grace Townsend and William Wilmerding Townsend, who are respectively infants; that the only living children of the said Mary, wife of Isaac Townsend, are the defendants Amy Townsend, Elizabeth Townsend, Sarah Green Townsend and Isaac Townsend, who are infants; and that the only living children of the said Hannah C., the wife of George S. Fox, are the defendants George Austen Fox and Rebecca Fox, who are infants. That the three several deeds aforesaid purport respectively to be made for the consideration of natural love and affection, and the further pretended consideration, in each case, of ten dollars, no part whereof was in fact paid, and that the three several houses and lots aforesaid were, at the dates and at the times of the delivery of said deeds respectively, and now are, each worth the sum of $40,000. That the said deeds were not, nor was either of them, delivered to the grantees therein respectively named at the time when the same bears date, nor for a long time thereafter, but that the said David Austen retained the said deeds

in his own possession or under his control until the delivery thereof, as hereinafter mentioned. That the aforesaid David Austen, Charles B. Spicer, John H. Austen, George W. Austen and James Austen, for several years prior to the 7th day of March, 1851, carried on business in the city of New York, as auctioneers and commission merchants, under their said firm name of Austens & Spicer, and that on or about the day last aforesaid they suspended payment, failed in business, and declared themselves to be insolvent and unable to pay their debts; that from a period long anterior to said failure the said firm and the respective members thereof were, in fact, insolvent and unable to pay their debts, and have so ever since continued, and that the outstanding debts and liabilities of said firm exceed the amount of the property of said firm, and the property of each and all of the members thereof, by a very large amount, viz. by at least the amount of $200,000. That at about the time of the failure of said firm of Austens & Spicer, and when and after the said firm and David Austen had become and were utterly insolvent, the said David Austen delivered or caused to be delivered the three several deeds before mentioned to the respective grantees therein named, and that the said deeds were recorded in the office of the register of the city and county of New York, as follows, viz: the deed to the said Hannah C., now the wife of the defendant George S. Fox, on the 6th day of March, 1851; the deed to the said Sarah Ann, wife of William H. Townsend, on the 8th day of March, 1851; and the deed to the said Mary, wife of Isaac Townsend, on the 12th day of March, 1851. That at the time when the said deeds were respectively signed and sealed by the said David Austen, the said firm of Austens & Spicer, and the respective members thereof were insolvent, and that the said David Austen knew, or had good cause to suspect and believe, and did suspect and believe such to be the fact, and that at the time the said deeds were respectively delivered, the said firm of Austens & Spicer and the respective members thereof were

insolvent, and that the said David Austen knew, or had good cause to believe, and did believe such to be the fact, and that the said respective deeds were made and executed and were delivered and accepted and received by the respective grantees, after the failure of said firm, or in contemplation of that event, and with the intent to hinder, delay and defraud the creditors of the said firm of Austens & Spicer. That the debts of the firm of Austens & Spicer, upon which the plaintiffs' judgment was recovered, were outstanding and existing against the said firm at the time the said deeds were respectively delivered by the said David Austen, and that the said deeds were respectively made and delivered with the intent to hinder, delay and defraud the plaintiffs in the collection of their said demands, and that the said deeds are respectively fraudulent and void as against the plaintiffs, and as against the judgment recovered by them. The plaintiffs further stated that the said David Austen, after the signing and sealing of the said deeds, continued in possession of the premises purporting to be thereby respectively conveyed, until the time when the said deeds were respectively recorded as aforesaid, and during all that time appeared as the ostensible owner thereof, and that if any delivery of said deeds, or either of them, was in fact made prior to the time of the recording thereof as aforesaid, the said David Austen and the said respective grantees designedly withheld the same from record, and the said David Austen remained and was permitted to remain in possession and the ostensible owner of said premises, with the design and intent of enabling him the better to obtain credit, and with the design and intent to hinder and delay and defraud those who should give him credit, based upon his possession and apparent ownership of the said property; and that by means of the premises aforesaid, the said David Austen and the said firm of Austens & Spicer were enabled to obtain credit for large amounts, and particularly for the debts upon which the said plaintiffs' judgment was recovered, which credits would not

have been given except upon the supposition that the said David Austen remained the owner of the said premises. That by reason of the making and recording of the said deeds, the plaintiffs are hindered and prevented from obtaining satisfaction of their said judgment by a sale of the premises purporting to be conveyed by said deeds under the execution upon said judgment, for that by reason of the cloud upon the title to said premises and upon the lien of said judgment thereon caused by the deeds aforesaid, the fair value of said premises cannot, nor can any reasonable approximation thereto, be obtained upon such sale. The plaintiffs further state, that the judgment recovered by them as aforesaid still remains in full force and effect, the same not having been reversed, annulled or in any way satisfied in whole or in part, and that there is not, to the knowledge of the plaintiffs, any property of the said judgment debtors, or any of them, out of which they can collect their judgment save the real estate embraced in and purporting to be conveyed by the said three deeds. The plaintiffs therefore demanded that the said three deeds might be adjudged to be fraudulent and void as against the judgment recovered by them, and that the said judgment might be adjudged and declared to be a lien upon the premises described in and purporting to be conveyed by the said respective deeds; and that the defendants and all persons claiming or to claim under them, or any of them, might be perpetually enjoined and restrained from setting up or claiming any estate, right or title under or by virtue of the said three several deeds, or either of them, in or to the premises purporting to be thereby conveyed, or any part thereof, as against any purchaser or purchasers thereof under the plaintiffs' judgment, and that the defendants, and each of them, might be adjudged to release to such purchasers all right, title, interest, claim and demand of, in and to the said premises, and that the defendants might be adjudged to pay the costs of this action; and for general relief.

An answer was put in by the defendants Wm. H. Town-

send and wife and their infant children, denying most of the material allegations in the complaint. They admitted the execution of the deed to Mrs. Townsend, and that it purported to be made for the consideration of natural love and affection, and the further consideration of ten dollars, and that no part of the pecuniary consideration expressed in said deed was in fact paid. They alleged that although the said deed bears date on the 28th day of September, 1848, yet that the same was not in point of fact subscribed and sealed by the said David Austen and Mary his wife, until the 13th day of October, 1848, and that on said last mentioned day and year the execution of the same was duly acknowledged by the said David Austen and Mary his wife, before a commissioner; that afterwards, and on the 23d day of October, 1848, the said David Austen and Mary his wife delivered the said deed so subscribed, sealed and acknowledged, to the defendant Sarah Ann Townsend, by handing the same to Henry Nicoll, Esq. for her use, to be by him held for her. That the said David Austen thereupon, or shortly afterwards, informed the said Sarah A. Townsend that he had so delivered the said deed, that the said Henry Nicoll had the custody of the said deed for her, and that she might get the same from him whenever she wished so to do. And the defendants insisted that the said acts of delivery formed a valid delivery to her, the said Sarah A. Townsend, of the said deed, so as to effectually vest the title of the said premises in her from the time of the handing of the deed to the said Henry Nicoll. The defendants denied that at or about the time of the failure of the said firm of Austens & Spicer, the said David Austen delivered, or caused to be delivered, the said deed to the grantee therein named. But they admitted and alleged that, after the failure of the said firm of Austens & Spicer, the said Henry Nicoll put into the personal possession and custody of the said Sarah Ann Townsend the said deed, which had been previously so executed and delivered to her. And they denied that, at the time when the said deed was signed and

sealed by the said David Austen, the said David Austen, or the said firm of Austens & Spicer, or the respective members thereof, were insolvent, or that the said David Austen knew, or had good or any reason to suspect or believe such to be the fact. On the contrary, they alleged that as well at the time of the signing and sealing the said deed as of the delivery of the same, and from that time continuously up to the beginning of the month of March, 1851, the said David Austen, the said firm of Austens & Spicer, and the respective members thereof, were solvent, and over and above all property mentioned in said complaint fully able to pay any just claim against them or any of them, if any there was, and that during all the said times, the said David Austen was possessed of a large real and personal estate independently of and in addition to his share or interest in the property of the said firm of Austens & Spicer. They also denied that the said deed was made and executed, or was delivered or accepted or received, after the failure of the said firm of Austens & Spicer, or that the same was either made and executed, or was delivered or accepted or received, in contemplation of any failure of the said firm of Austens & Spicer, or with the intent to hinder, delay or defraud the creditors of the said firm of Austens & Spicer, or of any of them; or that the said deed was fraudulent and void as against the plaintiffs, or as against the judgment recovered by them. They also denied that David Austen, after the signing and sealing of the said deed, continued in the possession of the premises purporting to be thereby conveyed, or of any part of the same, until the time when the said deed was recorded, or until any other time whatever, or that at any time after the signing and sealing of the said deed, David Austen appeared as the ostensible owner of the said premises, or of any part thereof. The defendants alleged and insisted that the plaintiffs' judgment is not, and never was, a lien upon the premises conveyed by the deed to the said Sarah Ann Townsend. Similar answers were put in by the defendants Isaac Townsend and Mary his wife and

their infant children, and by George S. Fox and Hannah C. his wife and their infant children. The answer of the defendants Isaac Townsend and wife contained the further allegation, that the premises mentioned in the deed to Mrs. Townsend were purchased by the said David Austen in or about the year 1836, with and for the sole purpose of erecting thereon a dwelling house for his daughter, Mary Townsend, and settling the same as a provision for herself and her family. That said dwelling house was so erected and completed in or about the month of October, 1840, and that thereupon the said David Austen, and the defendants Isaac Townsend and Mary Townsend, did mutually agree that the said Mary Townsend should enter upon and thenceforth dwell and reside on said premises with her family during her life, and that after her death the same should belong to her children her surviving, and that the said David Austen should and would convey the said premises to her with those conditions. That after the making of the said agreement, and under and by virtue of the same, and in part performance thereof, on her part, the defendant Mary Townsend in or about the month of October, 1840, entered into possession of the said premises, and has from that time dwelt and resided therein with her family continuously to the commencement of this action, and is now possessed of the said premises. And that the said deed to Mrs. Townsend was executed and delivered in performance of the said agreement. The cause was referred to Wm. M. Prichard, Esq. as referee, to take the testimony and report the same to the court.

On the trial before the referee, the counsel for the defendants, upon notice from the plaintiffs, produced in evidence two deeds, one bearing date the 28th day of September, 1848, from David Austen and wife to Mary Townsend, wife of Isaac Townsend, recorded in the register's office of New York, 12th March, 1851 ; the other of the same date, from the same grantors, to Hannah C. Austen, recorded in the same office, on the 6th March, 1851. Henry Nicoll, a witness for

the plaintiffs, being shown the said deeds, stated that he was the subscribing witness to those deeds; that he witnessed the execution of them by David Austen, one of the grantors, only. That the time at which he witnessed the execution of the said two deeds was on or after the 28th day of September, 1848, and before the 13th of October in that year; that he witnessed the execution of them by Mr. Austen at his (the witness') office, No. 7 Nassau street, where the deeds were, having been drawn by him; that after their execution, Mr. Austen took the deeds away with him. That the witness next saw the deeds, either on the 23d of October, 1848, or shortly before that date, in the possession of Mr. David Austen, at the witness' office, in the city of New York, where he brought them. That Mr. Austen then handed him the deeds, and the witness gave him, either at that time or on the 23d day of October, (if this was not the 23d,) a receipt for each deed, separately. One of those receipts was as follows:

"Received from Mr. David Austen and his wife Mary Austen, in escrow, an indenture of deed, bearing date the twenty-eighth day of September, 1848, made and executed by them to their daughter Sarah Ann Townsend, and conveying certain premises on the westerly side of Union place, to be delivered, and which I do hereby agree to deliver, to the said Sarah Ann Townsend at and upon the death of the said David Austen, or at such earlier period as may be by him designated. Dated New York, October 23d, 1848.

HENRY NICOLL."

The other receipt was for the deed to Mary Townsend and was in the same form. The witness also produced a receipt given by him at the same time, for a deed from David Austen to his daughter Hannah C. Austin, now Mrs. Fox, by which receipt the witness agreed to deliver the deed to her after the deaths of Mr. Austin and his wife, or at such earlier period as should be by either of them designated. The witness received back these receipts on the 5th day of March,

1851.   On that day Mr. David Austen called upon him and requested him to deliver to his daughters, respectively, the deeds mentioned in those receipts.   The witness requested him to give him the said receipts, at the bottom of each of which the witness wrote a direction to that effect, which now appears upon them.   One of those directions was as follows:

"Mr. Nicoll will please deliver the deed above mentioned to Mrs. Sarah Ann Townsend.   N. Y., Mar. 5, 1851.

DAVID AUSTEN."

Those at the foot of the other receipts were in the same form.   Each direction was signed by Mr. Austen at that time; and he then handed the receipts and directions to the witness; and the latter, on the same day, delivered the said deeds to Mr. Austen's daughters, according to said directions. It was agreed that a third deed, in all respects similar to the two produced, was executed, being to Mrs. Sarah Ann Townsend, one of the defendants; and that said deed, or a copy of it, should be produced; and that the same testimony as above given in reference to the other deeds was applicable to the third.   The witness further testified, that the houses upon the lots in question were built, by Mr. Austen, between the years 1836 and 1840.   That the premises conveyed by the deed to Mrs. Mary Townsend were occupied by her husband, herself and family, from the time the house on the premises was completed until the 1st of May, 1851 or 1852; the premises conveyed to the defendant Sarah Ann Townsend were occupied by her husband, herself and family, until they moved to Staten Island, about the year 1848; after that, Mr. John H. Austen, son of the defendant David Austen, and his family, occupied it up to 1st May, 1851; the other house, conveyed to Hannah C. Austin, was in the occupation of Mr. David Austen and his family from the time it was built until the 1st of March, 1851; the defendant Hannah C. Austin lived with her father during this period, having married the defendant George S. Fox, in November, 1848; that some time in September, 1848, Mr. Austen called upon the witness

to draw his will; that witness had been his counsel for many years previous; that after taking his instructions for his will, he said he thought it was now the right time to put the title of his daughters' houses in their names; he then directed the witness to prepare the deeds in question; he stated that he wanted the property in each case limited to his daughters for life, with remainder to their issue; and the witness prepared the deeds accordingly. That Mr. Austen then said, as he had frequently said to the witness, that he had built the houses for his daughters; he was then speaking of the houses conveyed to his daughters Mary and Sarah Ann. That when Mr. Austen brought these deeds to the witness on the occasion referred to, he asked him if there would be any objection to leaving them with the witness for his daughters, to be given to them at his death, and, in case of the deed to Hannah C. Austen, upon the death of his wife, in case he should die before his wife; that the witness told him he saw no objection to it; he then said if that was so he would leave them with the witness; the latter then suggested to Mr. Austen, that he ought to have some paper from the witness to show how he held them, to which he assented; that the witness thereupon drew the receipts which had been produced, and gave them to him, or sent them to him at his office.

David Austen, being examined as a witness on behalf of the defendants other than himself, testified to the execution of the deeds by him; that they were signed by him at Mr. Nicoll's office the day they are dated; and that his wife signed them about two weeks after at their residence, No. 31 Union place. He further testified as follows : "I called on Mr. Nicoll, and stated to him that I had a short time previous learned that the legislature had passed an act authorizing females to hold real estate in their own names, without being liable to the payment of their husbands' debts. I stated to Mr. Nicoll that my youngest daughter, Hannah Clarina, was engaged to be married to Mr. George S. Fox, and that Mrs. Austen and myself, after having understood that females

could hold property without being liable for their husbands' debts, had come to the conclusion that inasmuch as we were both advanced in years, and could not reasonably calculate on occupying the house for many years, that we would then give to this daughter, Hannah Clarina, a deed of this house, No. 31 Union square, which had been given to her by a will made in 1840, by me, to come to her upon the decease of her mother; that we should thereby save the expense of furnishing a house for her, and that we would live with her during the remainder of our lives; my instructions to Mr. Nicoll were to make out a deed to Hannah Clarina of No. 31 Union place; a deed for No. 33 Union place to my daughter Sarah Ann, and for No. 35 Union place to my daughter Mary; the deeds now produced were made in pursuance of those instructions. I also directed Mr. Nicoll to send a commissioner to my residence to take the acknowledgment of myself and Mrs. Austen to the deeds; the deeds were acknowledged by Mrs. Austen and myself, at our house, on the 13th day of October, 1848, before Mr. Ireland, a commissioner. The deed for Hannah Clarina was given to her immediately after the commissioner had left the house, she having been present in the parlor when the acknowledgment was made; the other two deeds I retained in my possession in the house. The first deed, that given to Hannah Clarina, she retained about one week in her own possession, then returned it to me, saying that she wished I would keep it for her, as she feared she might lose it; I then told her that I would put it, with the deeds to Sarah Ann and Mary, into the hands of Mr. Nicoll, and that she could have it whenever she wished; I then took the three deeds to Mr. Nicoll, and asked him if there was any objection to my leaving the deeds with him to be given to my daughters, and he replied there would be none whatever; he then suggested to me that it would be proper for him to give me a paper or receipt, in order to show how they were to be given up to my daughters; Mr. Nicoll made out such papers, one for each deed; whether he gave them to me at that time, or sent them

to me afterwards, I do not recollect. It was about three weeks or within a month after the acknowledgment, that my daughter Mary told me that her husband would like to put up a dining room in the rear of the house No. 35, similar to the one in the rear of No. 31, which I had built the spring previous; I then told her that she could have the deed whenever she wanted it, it being in the hands of Mr. Nicoll. As to No. 33, given to my daughter Sarah Ann, I told her that the deed of it to her was in Mr. Nicoll's hands; I cannot say how soon I told her; it might have been two or three months after, as she was then living at Staten Island. These three houses were built by myself, and were ready for occupation on the 1st day of October, 1840, or about that date. I occupied No. 31; moved in about first of October; my daughter Sarah Ann and her husband moved in about the same time into No. 33, and my daughter Mary and her husband into No. 35; they did not not occupy them as tenants, because I had given them to them in 1840; had built them expressly for them; and I had stated to them that the houses were built for them respectively. At the time of the execution of these three deeds, in the autumn of 1848, I held property which, after deducting all liens on it—mortgages—cost me about $270,000, irrespective of these three houses; I mean $270,000 over and above the mortgages, after giving away these houses; that is what the property cost me. The cash value of my property at that time, and as I then estimated it, was between one hundred and sixty and one hundred and seventy thousand dollars; in my judgment, I was then worth over $160,000 independent of the houses. The cost of building those three houses, exclusive of the lots, was over $90,000, and the lots cost about $15,000 apiece besides. There were mortgages on the property—$15,000 on each house; they were to Mr. Lenox; they were given in 1846 or 1847, and are still outstanding. There had previously been other mortgages on the property to about the same amount. I paid the interest on the mortgages, myself, from the time they were given un-

til the day of payment next previous to my failure, which took place in March, 1851; since that I do not know who has paid it. The receipts which I took from Mr. Nicoll I retained until after my failure; and at the time of making an assignment, I gave them up; I think that was the day after the failure, or the day of the failure. Our firm of Austens & Spicer considered ourselves perfectly solvent in 1849, and, I think, we must have had $150,000 or more of capital after paying all debts. I made an estimate of my property in the fall of 1848, or about that time, which showed an aggregate of $161,447.49, cash value, after deducting the mortgages thereon. The first item in that statement was, 'Cash capital with Austens & Spicer $98,147.48.' "

It was proved that the firm of Austens & Spicer failed on or about the 7th of March, 1851, owing debts amounting to over $1,800,000. Other testimony was given, which it is unnecessary to state.

The plaintiffs admitted that, on the books of the assessors of taxable property in the eighteenth ward for the year 1848, the premises No. 31 Union place were assessed in the name of David Austen; the premises No. 33 Union place, in the name of John H. Austen, and the premises No. 35 Union place, in the name of Isaac Townsend. That on the same books, for the year 1849, No. 31 Union place was assessed in the name of Hannah C. Fox; No. 33 in the name of John H. Austen; No. 35 in the name of Isaac Townsend. That on the same books for the year 1850, No. 31 Union place was assessed in the name of Hannah C. Fox; No. 33 in the name of Sarah A. Townsend, and No. 35 in the name of Isaac Townsend. It was also admitted that the debts of Austens & Spicer, upon which was recovered the judgment against them in favor of the plaintiffs, which is set forth in the complaint in this action, were owing by said Austens & Spicer on the fifth day of March, 1851, the same being then running to maturity.

Brown *v.* Austen.

*Wm. M. Evarts,* for the plaintiffs.

*Henry Nicoll, Wm. Curtis Noyes* and *C. O'Conor,* for the defendants.

SUTHERLAND, J.   When the deeds to his three daughters were executed and delivered to Mr. Nicoll, Mr. Austen was perfectly solvent, and could make a settlement of the property in question on them, without doing injustice to any creditor then existing.   As between the parties, natural affection was a sufficient consideration to support the deeds.   There is nothing in the case to show that by the transaction Mr. Austen intended to defraud any creditor then existing or subsequent.

The question as to the operation of the deeds, (independent of the question as to the delivery,) whether by them the grantor did or could, without any trustee or trust, convey or secure a contingent remainder in fee to vest, on the death of the daughters, to their surviving children, and the descendants of such of their children as may have died before the daughters respectively, is not, I think, in the case.   The deeds could, at all events, operate to convey life estates to the daughters respectively.   If the contingent remainders undertaken to be limited on the life estates by the deeds are void, they are void at law, and on the face of the deeds.   The plaintiffs had no occasion, or right, to come into a court of equity for a construction of the deeds merely, nor do they ask for such construction.   The equity of the plaintiffs' case must rest, I think, upon their theory, that the second delivery of the deeds by Mr. Nicoll to the daughters was and is fraudulent and void as to the plaintiffs.

The nature and effect, and perhaps *bona fides* of this second delivery to the daughters, depends upon the nature and effect of the first delivery to Mr. Nicoll.

The case turns, I think, upon the nature and effect of the first delivery.   Was it an absolute, unconditional delivery to

Mr. Nicoll, in trust for or for the use of the daughters, or was it a delivery in *escrow ;* that is, a conditional delivery?   The delivery of a deed need not be to the grantee; it may be to a stranger for and in behalf of the grantee, and if unconditional will take effect instanter.   (1 *John. Cas.* 253, *n. Shep. Touch.* 57.   4 *Cruise,* § 52.)

Considering not only the terms of the receipts given by Mr. Nicoll to Mr. Austen for the deeds, but also the situation of the parties, and all the other circumstances of the case, did Mr. Austen intend to deliver the writings to Mr. Nicoll as his deeds, and that they should take effect and operate as his deeds, presently and irrevocably, on the delivery to Mr. Nicoll; or did Mr. Austen intend to deliver the writings to Mr. Nicoll, in *escrow,* to be delivered by him to the daughters of Mr. Austen as his deeds, on the happening of the event, or of either of the events, mentioned in the receipts of Mr. Nicoll for the deeds, and that they should not operate or take effect as his deeds until such second delivery?   That this is the real question in this case, see *Wheelwright* v. *Wheelwright,* (2 *Mass. R.* 447;) *Hatch* v. *Hatch,* (9 *id.* 307;) 1 *John. Cas.* 253, *n. b ; Id.* 116, *n. a; Stilwell and wife* v. *Hubbard,* (20 *Wend.* 44;) *Jackson* v. *Leek,* (12 *id.* 105;) *Jackson* v. *Rowland,* (6 *id.* 666;) *Verplank* v. *Sterry,* (12 *John.* 536, 546, 551, &c.;) *Church* v. *Gilman,* (15 *Wend.* 656.) On this question, the fact that Mr. Nicoll, in drawing the receipts, stated that they were received by him in *escrow,* is not controlling.

In *Wheelwright* v. *Wheelwright,* above cited, the deeds were delivered to A. for the use of the grantees as *escrows,* as A. testified, to be delivered by him to the grantees after the death of the grantor.   A. further testified that it was the intent of the parties that the grantor should have the use of the premises during his life; and as some of the grantees were minors, and could not secure the use to him, that the deeds were delivered as *escrows;* that the deeds were executed to prevent the entail (by a previous devise in tail under

which the respondent claimed) from depriving the grantees of the land; and yet Parsons, Ch. J. held, " that the weight of the evidence was certainly very great, if not conclusive, in favor of the deeds having been delivered by the grantor as his deeds, and deposited with A. for the grantees;" but he held further, " that if delivered as *escrows,* then by relation they took effect from the death of the grantor."

In *Doe ex dem. Lloyd* v. *Bennett,* (8 *Car. & Payne,* 124,) there was a deed of gift to the grantor's daughter, delivered to a third party, not to be delivered to the daughter until after the grantor's death, and yet it was held that the delivery was complete, and that the deed would not have operated as an *escrow,* if it had been delivered on condition that the grantee should not have it till the grantor's death. In *Murray* v. *Stair,* (3 *D. & R.* 278; 2 *B. & C.* 82,) it was held that a bond executed with the usual formalities may operate as a deed *in presenti;* although, at the time of such execution, it was expressly agreed that it should not take effect until a certain event (the death of A. named in the condition, and until certain securities were returned to the obligor) had happened; and that the intention of the parties was a question of fact for a jury, on the whole evidence. (*See also Stewart* v. *Stewart,* 5 *Conn. R.* 317.)

The question, then, before stated, as to the delivery of the deeds by Mr. Austen to Mr. Nicoll, is a question of intention to be gathered from the whole evidence. If, by the transaction, Mr. Austen intended at that time irrevocably to secure the property in question to his three daughters and their issue, there was nothing to prevent him from doing it, and there was the natural affection of a father to induce him to do it. In the case of *Wheelwright* v. *Wheelwright,* (2 *Mass. Rep. before cited,*) Parsons, Ch. J. observed, " that it was not to be presumed that it was the intention of the grantor to deliver the deeds as *escrows,* to be after delivered as his deeds in the event of his death, when from the nature of the event they could not be considered as his deeds from the sec-

ond delivery." See also *Stilwell and wife* v. *Hubbard,* (20 *Wend.* 44,) and *Jackson* v. *Leek,* (12 *id.* 105,) before cited, to the effect, that a delivery after the grantor's death is nothing; that the delivery must be in his lifetime.

If deeds are delivered to a third party in *escrow,* and the grantor dies before the happening of the event upon which the second delivery is to be made, they can only take effect by the doctrine of relation; that doctrine being a fiction of law. (*Jackson* v. *Rowland,* 6 *Wend.* 669. 4 *Cruise, title Deed,* § 55.) But this doctrine of relation, being but a fiction of law, cannot be applied to the prejudice of the intervening rights of third parties, not parties or privies. (1 *John. Cas.* 90, *note. Heath* v. *Ross,* 12 *John.* 140.) I think, therefore, that there is no room for the doctrine of relation in this case; for if the deeds were delivered to Mr. Nicoll in *escrow,* or conditionally, they could take effect only from the second delivery, the delivery by Mr. Nicoll to the daughters. (*Jackson* v. *Catlin,* 2 *John.* 259.) But when the delivery by Mr. Nicoll to the daughters was made by the direction of Mr. Austen, he was desperately insolvent, and the plaintiffs were then his creditors; and I do not see why such second delivery should prejudice the plaintiffs' rights, or protect the property in question from their judgment. Such protection must rest, I think, on the completeness of the first delivery; on the intention that the deeds should take effect instanter, on the delivery to Mr. Nicoll. If the deeds were delivered to Mr. Nicoll in the first instance, instead of to the daughters, for the purpose of preventing them or their husbands having full control of the property, I do not think that circumstance should affect the question as to the completeness of the first delivery, or the question whether Mr. Austen by that delivery intended to pass a present estate. The present control or possession of the title deeds was a matter between Mr. Austen and his daughters. There is nothing in the case to show that the plaintiffs gave credit to Mr. Austen, or to his firm, because they supposed he was the owner of the prop-

Brown *v.* Austen.

erty covered by the deeds. Two of the houses were built for his daughters, and it does not appear that he was ever in the actual possession or occupation of them.

As a general rule, the delivery of a deed is complete when the grantor has put it beyond his power to revoke or reclaim the deed. (*Maynard* v. *Maynard,* 10 *Mass. R.* 458. *Doe* v. *Knight,* 5 *Barn. & Cress.* 671. *S. C.,* 8 *Dowl. & R.* 364. *Frisbie* v. *McCarty,* 1 *Stew. & Por.* 61 ; *and several of the cases before cited.*)

Could Mr. Austen have revoked or reclaimed the deeds of his own will, and without the consent of his daughters, at any time after their delivery by him to Mr. Nicoll ? I think he could not. The receipts given by Mr. Nicoll for the deeds neither reserved nor gave such right. By the terms of the receipts, which expressed the trust on which Mr. Nicoll received the deeds, they were to be delivered to the daughters at all events. By the receipts for the deeds to the daughters Sarah Ann and Mary, Mr. Nicoll agreed to deliver them to the daughters at and upon the death of Mr. Austen, or at such earlier period as he might designate. By the receipt for the deed to the daughter Hannah C., Mr. Nicoll agreed to deliver the deed to her after the deaths of Mr. Austen and his wife, or at such earlier period as might be by either of them designated. A right of revocation on the part of Mr. Austen was inconsistent with these agreements and trusts on the part of Mr. Nicoll; and Mr. Austen, after accepting the receipts, would not have been permitted to revoke or reclaim the deeds even as gifts. The gifts, if gifts, were executed by the delivery of the deeds to Mr. Nicoll, and the acceptance of the receipts by Mr. Austen.

It does tend to elucidate the question in this case, much, to affirm or deny that the transaction was of the nature of a *testamentary* disposition of real estate. Such an expression was unguardedly used in *Belden* v. *Carter,* (4 *Day's Rep.* 66,) but was afterwards explained and corrected in *Stewart* v. *Stewart,* (5 *Conn. Rep.* 317.) In *Belden* v. *Carter,* and in

*Ruggles* v. *Lawson,* (13 *John.* 285,) *Tooley* v. *Dibble,* (2 *Hill,* 641,) *Goodell* v. *Pierce,* (*id.* 659,) the questions were between those claiming under the deeds and the heirs at law of the grantor; and there was nothing in these cases to prevent the application of the doctrine of relation. But the very application of that doctrine showed that the deeds did not and could not take effect like a devise; for, by the application of that doctrine, they must have been deemed to have taken effect in the lifetime of the grantors, from the time of the first delivery.

In this case the deeds could never have taken effect as a devise, for they lack the necessary statutory formalities of a will. If Mr. Austen intended that the deeds should take effect like a devise, why did he go through with the ceremony of their execution and delivery to Mr. Nicoll? Why did he not devise the houses, &c. to his daughters? Why did his wife execute the deeds? If by his will he had devised the same property to his daughters, then why make and deliver the deeds to Mr. Nicoll upon the trust he did, unless he intended by the transaction to make a present and irrevocable settlement upon his daughters?

There are other circumstances disclosed by the evidence in this case, which go to show that Mr. Austen intended the deeds to take effect presently and irrevocably by the delivery to Mr. Nicoll. The houses on the three lots deeded to the daughters were built by Mr. Austen, about the year 1840, several years before the delivery to Mr. Nicoll—two of them for his daughters Sarah Ann and Mary, who were then married, and who were so informed. On their completion, Sarah Ann selected No. 33, and moved into it with her husband and family, and occupied it until about the 1st of May, 1847; Mary, with her husband and family, moved into No. 35, and occupied it until 1851, several years after the delivery of the deeds to Mr. Nicoll; and Mr. Austen, with his family, including his then unmarried daughter Hannah C., moved into No. 31 and occupied it until 1851. Isaac Townsend, the

husband of Mary, paid the taxes on No. 35 from the time he moved into it. Soon after the delivery of the deeds to Mr. Nicoll, Sarah Ann and Mary were informed of it by Mr. Austen, and Mary and her husband were both told by Mr. Austen that they could have the deed for No. 35 if they desired it. As to the deed to Hannah C. for No. 31, that, upon its execution, was actually delivered to her, and kept by her for a week, and then handed back by her to her father, with a request to deliver it to Mr. Nicoll with the deeds to her sisters. Mr. Fox, her intended husband, and to whom she was shortly after married, saw the deed in her hands; and the father of her intended husband had been previously informed by Mr. Austen that he had given, or intended to give, No. 31 to Hannah C.

Considering the number of Mr. Austen's children, and the situation and amount of his whole estate as disclosed by the evidence, the present and absolute conveyance to the daughters of the three houses and lots was a just and natural provision for them out of his estate.

The circumstance that Mr. Austen paid the interest on the mortgages on the property subsequent to the delivery to Mr. Nicoll, I do not deem very material. It only shows a disposition to make further gifts to his daughters.

Upon the whole, without adverting to other circumstances in the case, I am satisfied that the delivery to Mr. Nicoll should be considered an irrevocable and complete delivery for the use of the daughters; that by it the deeds took effect, and were intended to take effect presently, passing at least life estates to the daughters; upon which, or upon whatever estate did or could pass by the deeds, the plaintiffs have no claim or lien.

As to the point taken by the plaintiffs that the deeds, if valid, would unlawfully suspend the power of alienation, I do not think it well taken. The power of alienation, if suspended, is suspended only by the contingency of the remainders in fee. These remainders (if in fact created or validly

limited by the deeds) must vest on the death of the daughters respectively. It is a present estate that passes to the daughters by the deeds. The contingency of the remainders can suspend the alienation of the whole fee for one life only. Besides, if the deeds are void on this ground, they are void at law, and on their face. There was no need of the plaintiffs' coming to a court of equity to have them declared void. If the question as to the legal effect and operation of the deeds, supposing the first delivery to have been complete, can be called a cloud upon the title, it is a legal cloud, which should be cleared away by a court of law. ·

After a most careful consideration of the whole case, my conclusion is that the complaint should be dismissed, with costs.

[NEW YORK SPECIAL TERM, December 2, 1861. *Sutherland,* Justice.]